UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GENET HABTEMARIAM,

Plaintiff,

v.

VIDA CAPITAL GROUP, LLC; US MORTGAGE RESOLUTION; PNC BANK, NATIONAL ASSOCIATION; and DOES 1 to 50, inclusive,

Defendants.

No. 2:16-cv-01189-MCE-GGH

**MEMORANDUM AND ORDER**

In bringing this lawsuit, Plaintiff Genet Habtemariam ("Plaintiff") alleges that she was wrongfully subjected, in 2016, to foreclosure proceedings on a Second Deed of Trust that had been cancelled by the owner of the note, Defendant PNC Bank, N.A. ("PNC") some five years previously. Despite that cancellation, Plaintiff alleges the note was sold and ultimately assigned by PNC to Defendant Vida Capital Group ("Vida") who proceeded with the 2016 foreclosure. Plaintiff seeks to clear title to her property and further alleges various improprieties against both Defendants. Currently before the Court are (1) PNC's Motion to Dismiss Plaintiff's second through fifth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6);[1] (2) Plaintiff's request (found within

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

her Opposition to PNC's Motion to Dismiss) for leave to amend her complaint to add a claim for breach of contract; and (3) Plaintiff's Motion to Consolidate Defendant Vida's unlawful detainer action with the present case under Rule 42(a) on grounds that both actions have similar questions of law and fact. As set forth below, (1) Defendant PNC's Motion to Dismiss is DENIED; (2) Plaintiff's request for leave to amend is GRANTED; and (3) Plaintiff's Motion for Consolidation is GRANTED.

## BACKGROUND[2]

In 2001, Plaintiff obtained a purchase money loan to buy a house located at 7 Shipman Court in Sacramento, California ("the subject property"). Then, in April of 2007, she refinanced her initial loan through Gateway Bank FSB and took out a second mortgage from National City Bank, an entity which later merged into PNC. Plaintiff's second mortgage was secured by a Second Deed of Trust ("SDOT") recorded on April 17, 2007.

Some three years later, PNC notified Plaintiff by mail that its SDOT was discharged, apparently due to a settlement agreement PNC had reached with various agencies of the United States government. PNC effectuated that cancellation by sending a 1099-C form approved by the Internal Revenue Service for cancelling a debt. Plaintiff received the Form 1099-C on or about June 29, 2010. According to Plaintiff, because the 1099-C cancelled the amount she owed on the second mortgage, she believed it legally released her from any further obligation to pay the debt. Plaintiff accordingly reported the debt cancellation as income to the Internal Revenue Service for the 2010 calendar year.

Unbeknownst to Plaintiff, PNC never recorded a release of lien as to its SDOT, and in fact assigned its purported interest in the loan to Defendant U.S. Mortgage

[2] The following of recitation of facts is taken, sometimes verbatim, from the allegations contained in Plaintiffs' Complaint, ECF No. 1.

Resolution ("UMR") in approximately March of 2012. UMR, who made no attempt to foreclose on the loan, then sold the SDOT to Vida sometime in 2014. When Vida contacted Plaintiff in early 2015 in an attempt to collect on the instrument, Plaintiff responded by providing Vida with a copy of the Form 1099-C and asserting that the debt had been cancelled and was not collectable. Vida nonetheless recorded a Notice of Default on the subject property on September 22, 2015, and directed the trustee to transfer title to Vida itself through non-judicial foreclosure proceedings which culminated in title transfer to Vida by deed recorded on February 16, 2016.

On May 11, 2016, Vida filed an unlawful detainer action against Plaintiff. Plaintiff was given a three-day notice to quit the premises. Rather than comply with that notice, Plaintiff responded by commencing this action in state court on April 19, 2016. PNC removed Plaintiff's lawsuit to this Court the same day, citing diversity of citizenship. Then on June 7, 2016, PNC filed the instant motion to dismiss. Defendant Vida subsequently joined in that motion on July 18, 2016. In addition to opposing the motion, Plaintiff requested leave to amend her complaint in order to add a breach of contract claim. Additionally, on September 5, 2016, Plaintiff filed a Motion to Consolidate Cases in order to consolidate this matter with an unlawful detainer action filed by Vida on May 11, 2016. (Vida Capital Group, LLC v. Genet Habtemariam, 2:16-cv-01836-WBS-GGH).

## STANDARD

### A. Motion To Dismiss

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

///

///

///

**B. Request For Leave To Amend Complaint**

Federal Rule of Civil Procedure 15(a),[1] which applies here in the absence of a Pretrial Scheduling Order, provides that "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The policy of favoring amendments to pleadings, as evinced by Rule 15(a), is delegated to the court's sound discretion and "should be applied with extreme liberality." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981). It would be an abuse of discretion to deny a motion to amend where there is a lack of prejudice to the opposing party and the proposed amended complaint is neither futile nor sought in bad faith. Yakima Indian Nation v. Wash. Dept. Of Revenue, 176 F.3d 1241, 1246 (9th Cir. 1999).

**C. Motion To Consolidate**

Rule 42(a) provides for consolidation of related lawsuits, providing in pertinent part that "[i]f actions before the court involve a common question of law or fact, the court may; (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

The purpose of consolidation under Rule 42(a), where cases share such common questions of law or fact, is to enhance trial court efficiency by avoiding unnecessary duplication of proceedings and effort. See, e.g., Enterprise Bank v. Saettele, 21 F.3d 233, 235-36 (8th Cir. 1994); E.E.O.C. v. HBE Corp., 135 F.3d 543, 551 (8th Cir. 1998). Consolidation of appropriate cases also guards against the risk of inconsistent adjudications. E.E.O.C. v. HBE Corp., 135 F.3d at 550-51.

///

///

///

///

///

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

## ANALYSIS

### A. 1099-C Form's Legal Effect To Cancel A Debt

Defendant PNC argues that the issuance of an IRS Form 1099-C does not, alone, extinguish a debt. According to PNC, this mandates dismissal of all claims pled against PNC in the second, third, fourth and fifth causes of action[3] because Plaintiff's allegations of wrongdoing uniformly hinge on the assumption that Plaintiff's SDOT was indeed discharged by PNC's 2010 Form 1099-C.

Examination of applicable case law, however, shows at best a split in authority as to the legal effect of issuing a 1099-C. While there are decisions finding that issuance of a Form 1099-C does not, alone, extinguish a debt, those cases were often narrowly decided under circumstances where no evidence other than the cancellation itself supported a discharge. Unlike the present case, they were frequently decided on summary judgment as opposed to a motion to dismiss under Rule 12(b)(6). See F.D.I.C. v. Cashion, 720 F.3d 169, 181 n.10 (4th Cir. 2013) (affirming summary judgment against borrower when borrower offers no "proof of cancellation except the 1099-C Form itself"); see Diaz v. Green Tree Servicing LLC, No. C15-359RSL, 2016 WL 1077253, at *2 (W.D. Wash. Mar. 18, 2016) (denying borrower's summary judgment against lender because a 1099-C Form, alone, is insufficient evidence to support borrower's claims that lenders were deceptive or misleading). In fact, Defendant PNC relies on a case in which the court denied the lender's motion to dismiss because the borrower had not yet had the opportunity to conduct discovery. See Atchison v. Hiway Fed. Credit Union, No. 12-2143, 2013 WL 11750200, at *3-5 (D. Minn. Mar. 20, 2013). Here, unlike the cases arising on summary judgment cited by PNC, Plaintiff's claims are asserted on the pleadings and without the benefit of any discovery, both of which are factors militating against granting a Rule 12(b)(6) motion at this time. Moreover, it must also be noted that there is case law finding that issuance of a Form 1099-C may itself be prima facie

[3] The First Cause of Action is directed to Defendant Vida, only.

evidence for cancellation of a debt. Amtrust Bank v. Fossett, 224 P.3d 935, 936-37 (Ariz. Ct. App. 2009).

In addition, an examination of Plaintiff's asserted facts belies any notion that Plaintiff relies only on the fact of the 1099-C's filing in support of her argument that discharge occurred. Here, Plaintiff alleges that she acted on the Form 1099-C by reporting the debt forgiveness as income to the Internal Revenue Service on her 2010 return. She also alleges that PNC took no action to assign Plaintiff's SDOT until some four years after the Form 1099-C had been issued, and at a point when the limitations period for amending her 2010 return (three years) had passed. These circumstances plainly offer more support for Plaintiff's claim for discharge than the mere fact that a Form 1099-C was issued. PNC's Motion to Dismiss Plaintiff's complaint on grounds that she cannot state a prima facie case for debt cancellation must therefore be DENIED.[4]

**B. Cancellation Of Recorded Instruments**

As to Plaintiff's second cause of action to quiet title in the subject property by cancelling any instrument or deed obtained in reliance on the extinguished SDOT, Defendant PNC argues that Plaintiff's claim fails as a matter of law because she did not offer tender for the amount owed under the SDOT. Alternatively, even absent any tender requirement, Defendant PNC argues Plaintiff failed to allege specific facts showing the sale was tainted by fraud. Defendant's arguments are misplaced.

In order for a borrower to set aside a trustee's sale, or maintain a wrongful foreclosure claim, a plaintiff must allege "that (1) the defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) the plaintiff suffered prejudice or harm; and (3) the plaintiff tendered the amount of the secured indebtedness or was excused from tendering." Chavez v. Indymac Mortgage Services, 219 Cal. App. 4th 1052, 1062 (2013). A plaintiff who properly alleges that the underlying debt is void, however, is excused from the

[4] Because PNC's Motion to Dismiss Plaintiff's claim for declaratory relief in her fifth cause of action also depends on the argument that no prima facie case for debt cancellation can be established under the circumstances, PNC's Motion insofar as it pertains to the fifth cause of action also fails.

tender requirement. Chavez, 219 Cal. App. 4th at 1062; Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 112 (2011).

In this case, Plaintiff alleges Defendants never had legal authority to foreclose because PNC cancelled the debt attached to the SDOT in 2010. Pl.'s Compl., ¶ 60. According to Plaintiff, because PNC cancelled the debt in 2010, Defendant Vida lacked any contractual basis to exercise the power of sale. Plaintiff is therefore excused from alleging tender, because she instead alleges the underlying debt had been cancelled and was thus legally inoperative. See Chavez, 213 Cal. App. 4th at 1063 (2013) (holding borrower was excused from alleging tender when the underlying debt was allegedly invalid).

Additionally, Defendant PNC argues Plaintiff failed to plead facts alleging the Defendants had acted fraudulently when conducting the foreclosure sale. However, Plaintiff has the option to allege Defendants caused *either* an illegal, fraudulent, *or* willfully oppressive sale. Plaintiff clearly alleges an illegal sale of the subject property because Vida lacked authority to collect from a cancelled debt. Thus, Defendants would not have had authority to record a default, let alone the authority to foreclose on the subject property.

Because Plaintiff has pled sufficient facts as to her second cause of action, and Defendant PNC's Motion to Dismiss Plaintiff's quiet title claim is DENIED.

**C. Negligence**

In order for Plaintiff's negligence claim, as set forth in her Fourth Cause of Action, to survive a motion to dismiss, she must show that PNC owed her a legal duty. PNC contends that no such duty is present. Additionally, PNC argues that Plaintiff's negligence claim is barred by the two year statute of limitations, as set forth in California Code of Civil Procedure section 335.1. For the following reasons, PNC's motion to dismiss Plaintiff's negligence claim is DENIED.

///

///

**1. Duty.**

To prevail on a negligence claim, Plaintiff must show that PNC owed her a legal duty, that PNC breached the duty, and that the breach was a proximate or legal cause of her injuries. Merrill v. Navegar, Inc., 26 Cal. 4th 465, 477 (2001). Whether an actionable duty of care is present becomes the threshold inquiry in assessing any negligence claim. Bily v. Arthur Young & Co., 3 Cal. 4th 370, 397 (1992). Plaintiff alleges that Defendants "owed Plaintiff a general duty of care," as well as, "a statutory duty of care" under California Civil Code section 2924, *et seq.* (Pl.'s Compl. ¶ 72.). Additionally, Plaintiff has allegedly suffered injuries due to PNC's "illegal recordings." (Pl.'s Compl. ¶ 73.)

PNC argues that, as a matter of law, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. See Nymark v. Heart Federal Savings, 231 Cal. App. 3d 1089, 1096 (1991). However, PNC allegedly cancelled their lender relationship with Plaintiff. (Pl.'s Compl. ¶ 67.) The fact that PNC cancelled Plaintiff's SDOT, and therefore terminated its status as Plaintiff's lender, makes it impossible for PNC to now argue that any duty exception otherwise applicable to lenders applies in this case. Moreover, even if the Court were to consider PNC a lender for purposes of a duty analysis, PNC nonetheless acted outside the role of a conventional lender in taking the actions it allegedly took here, and consequently cannot argue that the exception applies. See, e.g., Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941, 951 (2014).

Furthermore, a mortgagee is obligated to execute a certificate of discharge within thirty days after any mortgage has been satisfied. Cal. Civ. Code § 2941(a). In this case, PNC allegedly cancelled the debt, but failed to perform their duty of recording a release of lien on the subject property. (Pl.'s Compl. ¶ 67.) Additionally, PNC sold an assignment to the cancelled SDOT, thereby exposing Plaintiff to illegal collection activities, and an illegal non-judicial foreclosure sale. (Pl.'s Compl. ¶ 74.) Therefore, Plaintiff properly alleged that PNC owed her a duty.

**2. Statute of Limitations.**

PNC next argues that Plaintiff's claim for negligence is barred in any event by the two-year statute of limitations under California Code of Civil Procedure section 335.1. PNC argues that the alleged failure to record the lien occurred in 2010, more than five years before Plaintiff filed her Complaint. (Def. PNC's MTD, ECF No. 6 at 10.) A claim generally does not accrue for statute of limitations purposes until it is "complete with all of its elements," such as wrongdoing, harm, and causation. See Pooshs v. Philip Morris USA, Inc., 51 Cal. 4th 788, 797 (2011). Under the so called "delayed discovery rule," the statute of limitations only "begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." Jolly v. Eli Lilly & Co., 44 Cal. 3d 1103, 1110 (1988). In this case, Plaintiff did not suffer harm until the most recent assignee of the SDOT, Vida, recorded a notice of default on the subject property on September 22, 2015 (Pl.'s Compl. ¶ 30), and given the cancellation notice she received, Plaintiff would arguably have had no reason to suspect any wrongdoing beforehand. The two-year statute of limitations thus did not begin to run until Plaintiff suffered harm through that 2015 default and the subsequent commencement of foreclosure proceedings. Because Plaintiff's original complaint was filed in state court on April 19, 2016 at a point well within two years following the entry of default against her, her lawsuit was timely and PNC's motion to dismiss Plaintiff's negligence claim on statute of limitations grounds is also DENIED.

**D. California Business And Professions Code Section 17200**

California's Unfair Competition Law ("UCL") permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. . . ." Cal. Bus. & Prof. Code § 17200. PNC argues that Plaintiff's third cause of action brought under the UCL should be dismissed because (1) Plaintiff lacks standing, and (2) the statute of limitations bars Plaintiff from bringing her claim.[5]

[5] PNC also argues that because a 1099-C Form cannot operate to cancel a debt, Plaintiff has failed to plead an unlawful, unfair, or fraudulent act on that basis as well. Contrary to PNC's assertion, however, Plaintiff's negligence allegations survive as set forth above. Those allegations of unlawful

First, Plaintiff has standing if she alleges an economic injury caused by PNC's wrongful conduct. Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal.App.4th 497, 521-23 (2013). Plaintiff alleges she has suffered economic loss, as well as other harm, from Defendant Vida's foreclosure sale of the subject property. (Pl.'s Compl. ¶ 66.) Although PNC was not involved in the foreclosure sale, Plaintiff alleges PNC had received a benefit from a government program for voluntarily cancelling the debt attached to the SDOT, PNC failed to record a release of lien with the trustee, and PNC received an additional benefit by assigning the cancelled deed to UMR. (Pl.'s Compl. ¶ 67.) According to Plaintiff, PNC's wrongful conduct of knowingly assigning a cancelled debt to third parties exposed her to the harm she now alleges. Therefore, Plaintiff has standing to bring a claim under the UCL.

Second, Plaintiff's claim is not barred by the four-year statute of limitations provision applicable to UCL claims, as set forth in California Business and Professions Code § 17208. This is because the California Supreme Court has determined that "the UCL is governed by common law accrual rules to the same extent as any other statute." Aryeh v. Canon Business Solutions, Inc., 55 Cal. App. 4th 1185, 1197 (2013). Therefore, the statute of limitations in section 17208 is tolled for the same reasons Plaintiff's negligence claim is tolled.

For reasons discussed above, PNC's Motion to Dismiss Plaintiff's third cause of action is DENIED.

**E. Request To Amend Complaint**

In her opposition to PNC's Motion to Dismiss, Plaintiff requested leave to amend her complaint to add a breach of contract claim against PNC. (ECF No. 8 at 12-15.) As indicated above, Rule 15(a) provides that leave to amend shall be freely given when justice so requires. Sharkey v. O'Neil, 778 F.3d 767, 774 (9th Cir. 2015) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). PNC nonetheless opposes Plaintiff on grounds that

---

conduct provide predicate violations to support Plaintiff's UCL claim. Gardner v. American Home Mortg. Servicing, Inc., 691 F. Supp. 2d 1192, 1201 (E.D. Cal. 2010).

the proposed amendment would be "futile" because (1) Plaintiff does not have standing to bring a claim under the contract she wishes to sue under, and (2) Plaintiff's claim is barred by the statute of limitations. (ECF No. 17.) Futility may indeed serve as a basis for denial of leave to amend where the proposed amendment is frivolous or advances a claim that is legally insufficient on its face. See id. For the following reasons, however, PNC's arguments do not preclude Plaintiff from asserting a breach of contract claim.

**1. Third party beneficiary.**

Plaintiff's proposed amendment seeks to enforce a contract PNC, as successor in interest to National City Bank, entered into with the United States Justice Department, the Consumer Financial Protection Bureau, the Federal Reserve, and the Office of the Comptroller of the Currency (collectively referred to as "the Government"). PNC argues the claim is futile because Plaintiff was, at most, only an incidental beneficiary to the settlement agreement and consequently does not have standing to bring suit as an intended beneficiary.

Plaintiff argues that because she was an intended beneficiary under the settlement agreement between National City Bank and the Government, she is entitled to damages for breach of that contract.. County of Santa Clara v. Astra USA, Inc., 540 F.3d 1094, 1101 (9th Cir. 2008) (holding a third party beneficiary has a right to sue if he or she is an intended beneficiary). The settlement was predicated on allegations that National City Bank discriminated against African-Americans and "charged borrowers higher rates not based on their credit worthiness, but based on race and national origin" during the years of 2002-2009. (See Pl.'s Opp'n, ECF No. 8, at 12-13.) Plaintiff alleges that as an African-American who received her loan from National City Bank in 2007, her mortgage was one of the those earmarked by the settlement agreement, and on that basis she claims she can sue "as a third party beneficiary to recover damages associated with the wrongful collection of the discharged debt" after Defendant released the part of its obligations under the settlement agreement. On that basis, Plaintiff has standing to sue and her proposed amendment is not futile.

**2. Statute of Limitations.**

Alternatively, PNC argues Plaintiff's breach of contract claim is futile because it will be barred under California Code of Civil Procedure section 337. California provides a four-year statute of limitations for commencing a civil action based on a written contract. Cal. Code Civ. Proc. § 337. PNC argues that the alleged wrongful conduct in Plaintiff's breach of contract claim occurred when PNC sent a 1009-C Form to Plaintiff in October 2010. Ordinarily, the statute of limitations for a contract claim begins to run upon the occurrence of the last element essential to the cause of action, and Plaintiff's ignorance of the cause of action does not toll the statute. See April Enter., Inc. v. KTTV and Metromedia, Inc., 147 Cal. App. 3d 805, 825 (1983). However, the discovery rule may be applied to breaches which can be, and are, committed in secret and where the harm will not be reasonably discoverable by plaintiff until a future time. Id. at 832. Because there are exceptions to the four-year statute of limitations, Plaintiff's claim cannot be deemed futile, especially in this early stage of litigation. Therefore, Plaintiff's request for leave to amend is GRANTED.

**F. Plaintiff's Motion For Consolidation**

On May 11, 2016, Defendant Vida filed an unlawful detainer action against Plaintiff that subsequently was related to the present case on August 5, 2016. (Vida Capital Group, LLC v. Genet Habtemariam, No. 2:16-cv-01836-MCE-GGH). On April 19, 2016, Plaintiff filed a Motion for Consolidation, requesting the unlawful detainer case be consolidated with this matter under Rule 42(a). For the following reasons, Plaintiff's Motion for Consolidation is GRANTED.

As indicated above, when actions involving a common question of law or fact are pending before the court, it may consolidate the actions for trial. Fed. R. Civ. P. 42(a). A trial court has wide discretion to grant or deny a motion to consolidate under Rule 42(a). Frazier v. Garrison I.S.D., 980 F.2d 1514, 1531 (5th Cir. 1993).

Plaintiff's Motion for Consolidation is unopposed and meets all the requirements set forth in Rule 42. First, both actions are currently pending. Second, both cases

revolve around a common question of law regarding the discharge or cancellation of debt attached to Plaintiff's second mortgage. Furthermore, Vida and Plaintiff seek related relief in both actions. Therefore, Plaintiff's Motion to Consolidate Vida's unlawful detainer case (Vida Capital Group, LLC v. Genet Habtemariam, No. 2:16-cv-01836-WBS-GGH) with this action is GRANTED.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 5) is DENIED. Additionally, Plaintiff's request for leave to amend is GRANTED. Plaintiff may file an amended complaint adding her proposed new cause of action for breach of contract not later than twenty (20) days following the date this Memorandum and Order is electronically filed. Finally, Plaintiff's Motion for Consolidation (ECF No. 16) is GRANTED. Both this case and the unlawful detainer action (Vida Capital Group, LLC v. Genet Habtemariam, No. 2:16-cv-01836-MCE-GGH) are consolidated for all purposes, including trial. The lead case in the consolidated action shall be Habtermariam v. Vida Capitol Group, et al., Case No. 2:16-cv-01189-MCE-GGH.

IT IS SO ORDERED.

Dated: February 13, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE